UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY SMITH,

    Plaintiff,                                   Civil Action No. 16-11691

v.                                           HON.  VICTORIA A. ROBERTS
                                               U.S. District Judge
                                               HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    Plaintiff Mary Smith ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On February 21, 2013, Plaintiff filed applications for DIB and SSI, alleging disability as of April 1, 2012 (Tr. 164-168, 169-174). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on October 9, 2014 in Oak Park, Michigan before Administrative Law Judge ("ALJ") Timothy C. Scallen (Tr. 28). Plaintiff, represented by attorney Franci Silver, testified (Tr. 31-54), as did Vocational Expert ("VE") Pauline Pegram (Tr. 54-62). On November 21, 2014, ALJ Scallen found that Plaintiff was not disabled (Tr. 9-23). On March 11, 2016, the Appeals Council denied review (Tr. 1-5). Plaintiff filed for judicial review of the final decision on May 11, 2016.

## BACKGROUND FACTS

Plaintiff, born February 6, 1969, was 45 when the ALJ issued his decision (Tr. 23, 164). She completed three years of college (Tr. 190). Her application states that she worked previously as a complaint desk worker, retail salesperson, teacher, and waitress (Tr. 190). She alleges disability due to bipolar disorder (Tr. 189).

### A.    Plaintiff's Testimony

*Plaintiff's counsel prefaced his client's testimony by noting that since a previous (February, 2012) denial of benefits, her condition had worsened* (Tr. 31).

Plaintiff then offered the following testimony:

She worked as a substitute teacher before ceasing work in April, 2012 (Tr. 31). She stopped working after experiencing a manic episode (Tr. 32). The episodes were typically

triggered by stress and characterized by paranoia and delusions (Tr. 32). During her most recent manic episode, she walked around the city telling people that she was a kidnapped princess (Tr. 33). Before ceasing work in 2012, she worked full time as a substitute teacher (Tr. 33).

Plaintiff was currently unable to work because the psychotropic medications Haldol and Prozac made her "shaky" and "sleepy" (Tr. 34). She denied current manic episodes (Tr. 35). She also experienced mood swings of "happy to sad" which were triggered by arguing with others and sitting at a computer for long periods (Tr. 35). She experienced mood swings around once a month (Tr. 36). She coped by trying "to relax and distract" herself (Tr. 36). She also experienced heartburn and right hip arthritis (Tr. 36). She experienced level "ten" right hip pain during changes of the weather (Tr. 37-38). She took an over-the-counter dosage of Motrin for the hip pain (Tr. 37-38). She had also experienced left-side lower back pain for the past two years (Tr. 38). She declined a recommendation for pain clinic treatment because she did want to take additional medication (Tr. 38).

Plaintiff stood 5' 7" and weighed 245 pounds (Tr. 39). She was unable to perform any carrying due to lower back pain and was unable to sit for more than 30 minutes without a break (Tr. 39). She was able to sit again after walking for "a few minutes" (Tr. 40). She did not have walking limitations but experienced problems using stairs (Tr. 40-41). She experienced pain upon stooping, kneeling, crouching, and crawling (Tr. 41). She did not experience problems with her arms or hands or physical limitations in dressing herself or

doing housework (Tr. 41). She lost her driver's license after failing to pay a traffic ticket, but was disinclined to drive anyway due concentrational problems brought on by the psychotropic medication (Tr. 42). She was able to walk to the grocery store and buy her own groceries (Tr. 43, 45). She relied on food stamps and support from her boyfriend for essentials (Tr. 43).

Plaintiff was "always friendly," and in addition to her boyfriend, had friends with whom she drank coffee, visited, and went for walks (Tr. 44). She did not experience problems interacting with her family (Tr. 44). She spent a couple of hours watching television each day but did not have a computer (Tr. 45). She was unable to concentrate for the duration of a full- length movie due to her short attention span (Tr. 46). She typically took a two-hour nap every day due to medication side effects and the need to rest her back (Tr. 47). She drank around one beer a week and did not use illicit drugs (Tr. 48).

In response to questioning by her attorney, Plaintiff testified that she cleaned her kitchen but was "nervous" due to cockroaches in her apartment (Tr. 49). Prior to living in public housing, she lived in a homeless shelter (Tr. 49). She lost custody of the youngest of her three children, a nine-year-old, after she stopped taking her psychotropic medication due to a back injury (Tr. 51). In December, 2012, following the loss of custody of the nine-year-old, she was involuntarily admitted by her sister for inpatient treatment (Tr. 51, 53). She did not have any contact with her adult son, 23, but saw her daughter, 25, regularly (Tr. 52-53).

### B.     Medical Evidence[1]

### 1. Treating Sources

April, 2011 treating records by psychiatrist Theethaye Ittiara, M.D. state that Plaintiff's psychological condition was stable on medication (Tr. 368). Plaintiff reported "on and off" back pain (Tr. 368).

A June, 2012 review of systems (physical) was unremarkable (Tr. 330). In October, 2012, Plaintiff sought emergency treatment for back pain (Tr. 446). A clinical examination revealed no neurological deficits (Tr. 446). Plaintiff exhibited full low extremity strength and a normal gait (Tr. 446). She declined a prescription for narcotic pain medication (Tr. 446). Imaging studies of the lumbar spine were unremarkable except for "minimal" degenerative changes and mild spondylosis at L5-S1 (Tr. 328).

The next month, Plaintiff sought emergency treatment for back pain resulting from a fall (Tr. 317). She denied radiating pain (Tr. 317). She exhibited a normal mood and affect (Tr. 310, 315-316). Imaging studies following the fall showed only "mild diffuse arthritis" (Tr. 320). She reported that back pain occurred "rarely" (Tr. 312, 314). She exhibited a normal range of motion (Tr. 310).

The same month, Plaintiff sought emergency treatment for psychological problems. Emergency room records state that she appeared confused, tearful, paranoid, anxious, and

---

[1] Medical records significantly predating the alleged onset of disability and records for conditions unrelated to the claim for benefits, while reviewed in full, are omitted from the present discussion.

combative, claiming that her biological son's foster parents were trying to kill him (Tr. 387-388, 391, 467). Plaintiff admitted that she had stopped taking psychotropic medication four months earlier (Tr. 394, 470). She was discharged to a shelter for battered women (Tr. 471), and released from there two days later in stable condition (Tr. 492).

Upon petition by Plaintiff's sister, Plaintiff was admitted for inpatient psychiatric treatment in December, 2012 (Tr. 388, 403). Angela C. Kallis, M.D. found that Plaintiff exhibited "very poor judgment with no insight into treatment needs" (Tr. 396). Plaintiff was diagnosed with bipolar I disorder, severe, with psychotic features (Tr. 417). She complained of non-radiating low back pain for which she took Advil and Motrin "sometimes" (Tr. 432). Over the course of the hospital stay, Plaintiff's hygiene, grooming, and sleep patterns improved with medication (Tr. 388). She exhibited good judgment upon discharge (Tr. 388). She also exhibited a normal gait (Tr. 387).

In January, 2013, psychiatrist Someswara Navuluri, M.D. referenced the recent week-long inpatient treatment from the previous month, noting that Plaintiff was historically "very inconsistent in both taking medication" and attending medication reviews and counseling sessions (Tr. 366). He noted that Plaintiff, now compliant with medication, was "doing well," denied psychosis, and exhibited good hygiene and judgment (Tr. 366). Counseling notes from the same month state that Plaintiff denied hallucinations (Tr. 364). Dr. Navuluri's March and April, 2013 medication review records state that depression and anxiety were improving and that she was "alert, cooperative, and appropriate" with good judgment (Tr.

370-371, 384-385, 518). Plaintiff denied medication side effects (Tr. 370). In May, 2013, Plaintiff reported the side effect of dry mouth and light-headedness after taking taking Cogentin for one week (Tr. 498). She denied dizziness (Tr. 498). She exhibited full strength in all extremities and a normal gait (Tr. 499-500). She was advised to discontinue the use of Cogentin (Tr. 500). The following month, Plaintiff reported "on and off" right hip pain (Tr. 519). Later the same month, she reported good results from Naprosyn (Tr. 530). Dr. Navuluri's May, June, August and September, 2013 medication review states that Plaintiff exhibited good judgment and had no medication side effects (Tr. 380-383, 519). Dr. Navuluri's November and December, 2013 likewise state that Plaintiff's mood was stable and that she was "pleasant, cooperative, appropriate," and "not in any acute distress" (Tr. 512-513).

Dr. Navuluri's treating records January through August, 2014 note good results from medication with no side effects (Tr. 506-511). April, 2014 treating records note a diagnosis of lumbago (Tr. 548).

### 2. Non-Treating Sources

In July, 2013, James Tripp, Ed.D. performed a non-examining review Plaintiff's psychiatric records on behalf of the SSA, finding that due to schizophrenia, affective, and personality disorders, she experienced mild restriction of activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace (Tr. 96-97). Inconsistently, the report states that Plaintiff was moderately limited in the ability to carry

out "very short and simple instructions" but did not experience significant limitation in the ability to carry out detailed instructions (Tr. 98-99). He found that Plaintiff's social limitations were due to medication non-compliance (Tr. 99). He found that "no new and material evidence" of a change in her condition since the February 10, 2012 finding of non-disability (Tr. 101).

### C. Vocational Expert Testimony

VE Pauline Pegram classified Plaintiff's past relevant work as an office helper as unskilled and exertionally light; teacher's aide I, skilled/light; waitress, semiskilled/light; assembler, motor vehicle, unskilled/medium; and telemarketer, semiskilled/sedentary[2] (Tr. 58-59). The ALJ then posed the following set of hypothetical restrictions, taking into account Plaintiff's age, education, and work history:

> [W]ork at all exertional levels but has the following non-exertional limitations. Limited to simple, routine, repetitive tasks, no tasks which involve fast paced production, what I mean is simple, routine, repetitive tasks . . . limited to only simple work related decision making with few changes in the work place involving either work responsibilities or work procedures. With those limitations alone [is there] any past work that can be done? (Tr. 60).

Based on the above restrictions, VE testified that the hypothetical individual would

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

be unable to perform Plaintiff's past relevant work but could perform the light, unskilled jobs of a laundry worker (3,900 positions in the State of Michigan) and housekeeper (2,100) (Tr. 61). In the exertionally medium category, the VE testified that the jobs of hand packager (1,800) and cleaner, (hospital) (1,500) were available (Tr. 61). The VE testified that the need to be off task for more than 10 percent of the workday (excluding regularly scheduled breaks) would be work-preclusive (Tr. 61-62).

### D. The ALJ's Decision

On November 21, 2014, ALJ Scallen found that since an earlier, February 10, 2012 finding of non-disability, Plaintiff's condition had improved (Tr. 9, 24). Citing the treating records, the ALJ found that Plaintiff experienced the severe impairment of "bipolar disorder" but that the impairment did not meet or equal an impairment listed in 20 CF.R. Part 404, Subpart P, Appendix 1 (Tr. 12-13). The ALJ found that obesity did not cause either exertional or non-exertional limitation (Tr. 12). The ALJ found that Plaintiff's "occasional right hip pain and low back pain" did not significantly limit her work-related abilities (Tr. 13). The ALJ found that Plaintiff experienced mild limitation in activities of daily living, no limitation in social functioning, and moderate limitation in concentration, persistence, and pace (Tr. 13-14). He found that Plaintiff retained the Residual Functional Capacity ("RFC") for work at all exertional levels with the following non-exertional limitations:

> [Simple, routine, repetitive tasks; work performed in an environment free of fast paced production requirements; and work involving only simple, work-related decisions with few, if any, workplace changes (Tr. 16).

Citing the VE's findings, the ALJ found that while Plaintiff was unable to perform any of her past relevant work, she could perform the light, unskilled work of a laundry worker and housekeeper and medium work of a hand packager and cleaner (Tr. 22 *citing* Tr. 61).

The ALJ discounted Plaintiff's allegations of disability. He cited her own acknowledgment that she "had no difficulty" caring for her own personal needs, preparing meals, doing housework, shopping, paying bills, going to church, and visiting with friends (Tr. 17). The ALJ cited Plaintiff's sister's March, 2013 report that Plaintiff handled stress and changes in routine adequately (Tr. 17). He also cited Dr. Navuluri's treating notes stating that Plaintiff obtained good results when compliant with psychotropic medication prescriptions (Tr. (Tr. 20-21).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.

1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Substantial Evidence Supports the ALJ's Determination

Plaintiff disputes the RFC for a full range of work at all exertional levels, arguing that the ALJ erred by failing to account for her back and hip pain in crafting the RFC. *Plaintiff's Brief,* 9-10, *Docket #21,* Pg ID 609. Turning to the alleged psychological limitation, she argues, in effect, that ALJ's credibility determination was supported by only fragments of the record and that the record as a whole points to a finding of disability. *Id.* at 10. In particular, she contends that the ALJ failed to consider the work-related limitations brought about by her medication side effects. *Id. Id.* at 11.

### A. The Physical Limitations

Substantial evidence supports the ALJ's finding that the back condition did not cause more than minimal (non-severe) work-related limitations (Tr. 12-13). At Step Two, "impairment or combination of impairments ... found 'not severe' and a finding of 'not disabled' is made ... when medical evidence establishes only a slight abnormality or [] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 WL 56856,*3 (1985). "In the Sixth Circuit, the severity determination is 'a *de minimis* hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. February 22, 2008)(*citing Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998)). "The goal of the test is to 'screen out totally groundless claims.'" *Id.* (*citing Farris v. Secretary of Health & Human Services*, 773 F.2d

85, 89 (6th Cir. 1985)).

Contrary to Plaintiff's argument, the ALJ provided a detailed rationale for his finding that the back and hip conditions caused no more than minimal limitations . First, at Step Two of the sequential analysis, the ALJ discussed the records pertaining to the back and hip conditions (Tr. 12-13). He observed that October, 2012 treating records noted Plaintiff's report of "some tenderness of the right hip[] which improved with over-the-counter pain medication" (Tr. 12). He noted that Plaintiff did not require "significant follow-up treatment" (Tr. 12). He observed that while she was treated for complaints of low back pain, neurological testing was negative for abnormalities and she exhibited full lower extremity strength and a normal gait (Tr. 12). The ALJ noted that x-rays taken of the spine showed only "mild diffuse arthritis and minimal grade 1 anteriolisthesis" at L4-L5 and that Plaintiff did not require followup treatment (Tr. 12-13). The ALJ cited May, 2013 records showing 5/5 strength and a normal neurological evaluation and Plaintiff's June, 2013 own report that she was exercising for 40 to 45 minutes each day (Tr. 13). The ALJ noted that the "occasional" hip and back pain did not require "significant follow-up treatment" and that the physical evaluations were "relatively unremarkable" (Tr. 13). He remarked elsewhere that "the objective medical evidence, the claimant's function report, and the third-party function report[] do not corroborate [her] allegations of significant low back pain or right hip pain" (Tr. 17-18). The ALJ's findings mirror my own review of the medical transcript showing that Plaintiff sought, at most, occasional and exclusively conservative treatment for the hip

and back condition.

Because the finding that Plaintiff did not experience significant work-related physical limitations is well supported and explained, the request for remand on this basis should be denied.

### B. The Credibility Determination

For overlapping reasons, the ALJ's credibility determination does not provide grounds for remand. The credibility determination, currently guided by SSR 96-7p, describes the process for evaluating symptoms.[3] As a threshold matter, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment ... that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2 (July 2, 1996). The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."[4] *Id.*

---

[3] In March, 2016, SSR 16-3p superceded SSR 96-7p. The newer Ruling eliminates the use of the term "credibility" from SSA policy. SSR 16-3p, 2016 WL 1119029, *1 (Mar. 16, 2016). The Ruling states that "subjective symptom evaluation is not an examination of an individual's character." Instead, ALJs are directed to "more closely follow [the] regulatory language regarding symptom evaluation." See 20 C.F.R. § 404.1529(c)(3), fn 7, below. Nonetheless, SSR 96-7p applies to the present determination, decided on May 11, 2015. See *Combs v. CSS*, 459 F.3d 640, 642 (6th Cir. 2006)(*accord* 42 U.S.C. § 405(a))(The Social Security Act "does not generally give the SSA the power to promulgate retroactive regulations").

[4] In addition to an analysis of the medical evidence, 20 C.F.R. 404.1529(c)(3) lists the

Plaintiff's argument that the ALJ glossed over her psychiatric hospitalizations and visual and auditory hallucinations, *Plaintiff's Brief* at 10, is not well taken. The ALJ acknowledged that in October, 2012, Plaintiff sought intervention after she lost custody of her son and that in December, 2012 she was hospitalized for paranoia (Tr. 19). However, he noted that over the course of the hospitalization, Plaintiff's condition improved after she became medication compliant (Tr. 19). The ALJ cited Dr. Navuluri's treating records from January, 2013 forward stating that Plaintiff showed consistently good judgment, grooming, and affect and that the conditions of depression and anxiety were improving (Tr. 20). This is consistent with my own review of the medical transcript showing uniformly good reports post-dating the December, 2012 hospitalization (Tr. 366, 370-371, 380-383, 384-385, 506-511, 518-519). Plaintiff's argument that she experienced disability-level psychological symptoms subsequent to the hospitalization is unsupported by the records.

Plaintiff's argument that the ALJ failed to consider the allegation of disabling medication side effects is flatly contradicted by the administrative opinion. The ALJ permissibly rejected the allegations of side effects on the basis that Dr. Navuluri's treating

---

factors to be considered in making a credibility determination:  (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

records stated "consistently" that Plaintiff repeatedly denied medication side effects (Tr. 19). While my own review of the records shows that in May, 2013, Plaintiff reported the side effect of dry mouth and light-headedness after taking Cogentin for one week, she was advised to discontinue its use (Tr. 499-500). The subsequent records make no mention of medication side effects. As such, the ALJ's finding that Plaintiff work abilities were not impaired by medication side effects is supported by substantial evidence.

Because the credibility determination is well supported and articulated, the deference customarily accorded to the ALJ's findings is appropriate here. It is well established that "an ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.' " *Cruse v. CSS*, 502 F.3d 532, 542 (6th Cir. 2007) (*citing Walters v. CSS,* 127 F.3d 525, 531 (6th Cir. 1997); *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989)) (*citing Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

My recommendation to uphold the administrative findings should not be read to trivialize Plaintiff's limitations and medical problems. Nonetheless, the ALJ's determination that she was capable of a significant range of unskilled work is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

**CONCLUSION**

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Issue first raised in objections to a magistrate judge's report and recommendation are deemed waived. *U.S. v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: July 6, 2017             s/R. Steven Whalen
                                R. STEVEN WHALEN
                                UNITED STATES MAGISTRATE JUDGE


## CERTIFICATE OF SERVICE

I hereby certify on July 6, 2017 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants July 6, 2017.

                                s/Carolyn M. Ciesla
                                Case Manager for the
                                Honorable R. Steven Whalen